**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 23-225** |
| **ARDAVAN ALAMOUTINIA** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Defendant Ardavan Alamoutinia, a category VI convicted felon and admitted fraudster, stole millions of dollars of COVID-19 relief funds, and lived a lavish lifestyle, for a time, off the back of American taxpayers. Alamoutinia abused and manipulated not just any government program, but one specifically designated by Congress to provide a financial safety net and stability through the most tumultuous period in this country since Vietnam. As part of his fraud scheme, Alamoutinia stole not just American tax dollars, but the identities of hundreds of unsuspecting people, and filed for unemployment benefits in their name and without their knowledge. Alamoutinia's crimes affected not only the federal government and the honest tax payers who pay into the government, but also known and identifiable citizens who did not know him, and should never have been victimized by his crime or his greed. For these reasons, as well as for the reasons provided below, the government recommends a sentence of incarceration at the top of agreed upon guideline range of 89 to 124 months' imprisonment, absent any basis for a below-guideline sentence addressed in the supplemental sealed attachment to this sentencing memorandum.

A sentencing court follows a two-step process, first calculating the range under the Sentencing Guidelines, and then considering that range along with all pertinent 18 U.S.C. § 3553(a) factors in determining the appropriate sentence. *See* USSG § 1B1.1 (Nov. 1, 2025).[1]

At the second step of the sentencing process, "[t]he record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted). *See also Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing.").

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors which support a sentence at the top of the agreed upon Guideline range of 89 to 124 months' imprisonment.

## I. <u>BACKGROUND</u>

---

[1] Courts previously followed a three-step process, in which the court first calculated the guideline range, then next ruled on motions for departure, before considering the 3553(a) factors. *See United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). In an extensive amendment to the Guidelines effective November 1, 2025, the Sentencing Commission eliminated the departure provisions in the manual and dictated the two-step process described above.

On March 25, 2026, the defendant pled guilty to conspiracy to commit wire and mail fraud, in violation of 18 U.S.C. § 1349 (Count 1); ten counts of mail fraud, in violation of 18 U.S.C. § 1341 (Counts 2 through 11); theft of public money, in violation of 18 U.S.C. § 641 (Count 12); and aggravated identity theft, in violation of 18 U.S.C. § 1028A (Count 13). During his plea colloquy, the defendant admitted that he along with co-defendant Aryanah Davison collected the personally identifiable information of hundreds of others, which was received from a third co-conspirator, and used that information to file hundreds of fraudulent Pandemic Unemployment Assistance ("PUA") applications. Alamoutinia also filed a fraudulent PUA application in his own name. Alamoutinia and Davison subsequently made hundreds of thousands of dollars in purchases, cash withdrawals, and cryptocurrency purchases with the ill-gotten proceeds.

## II. SENTENCING CALCULATION

### A. Statutory Maximum Sentence

The maximum penalties for each of Counts 1 through 11, charging conspiracy to commit mail fraud (Count 1) and mail fraud (Counts 2-11), are a term of imprisonment of 20 years, a term of supervised release of three years, a fine of $250,000, and a special assessment of $100.

The maximum penalties for Count 12, charging theft of public money, are a term of imprisonment of 10 years, a term of supervised release of three years, a fine of up to $6,354,752, which is twice the amount of government loss, and a special assessment of $100.

The maximum penalties for Count 13, aggravated identity theft, are a mandatory minimum term of imprisonment of two years, to be imposed to run consecutive to any other count of conviction, a term of supervised release of one year, a fine of $250,000, and a special

assessment of $100.[2]

The total permissible statutory maximum sentence is a term of imprisonment of 232 years, a two-year mandatory minimum term of imprisonment, a term of supervised release of three years, a fine of $9,354,752, and a special assessment of $1,300.

**B. <u>Sentencing Guidelines Calculation</u>**

The Probation Office calculated the defendant's advisory guideline range as follows, and the government concurs with the calculation. The base offense level is seven pursuant to USSG § 2B1.1(a)(1). PSR ¶ 34. The fraud loss caused by the defendant and his co-conspirators is $3,177,376, which results in a sixteen-level increase from the base offense level under USSG § 2B1.1(b)(1)(I). PSR ¶ 35. The offense involves ten or more victims—specifically, individuals whose personal identifying information ("PII") was stolen and used by the defendant—which results in a two-level increase under USSG § 2B1.1(b)(2)(A). PSR ¶ 36. The defendant also orchestrated the scheme and recruited Davison to participate; therefore, a two-level increase for leadership is appropriate under USSG § 3B1.1(c). PSR ¶ 38.

The government agrees that the defendant has demonstrated acceptance of responsibility and provided timely notification to the government of his intent to plead guilty, and that a total three-level decrease for timely acceptance of responsibility is appropriate under USSG § 3E1.1(a) and (b). PSR ¶¶ 42-43

The government agrees that the total offense level is 24, and that based on the defendant's lengthy criminal history, the defendant is a criminal history category of VI. PSR ¶ 126. The government agrees that the appropriate Guideline Range is 100 to 125 months'

[2] The terms of the plea agreement include an option to dismiss the remaining counts upon the conclusion of the sentencing hearing.

imprisonment, plus 24 months' imprisonment resulting from the defendant's conviction for aggravated identity theft, and that the total appropriate Guideline range is 124 to 149 months' imprisonment. *Id.*

## III. ANALYSIS

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 569 U.S. 530, 542 (2013) (quoting *Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 569 U.S. at 543. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.* at 544.

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been

found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

**A. Consideration of the 3553(a) Factors Regarding Imprisonment**

The defendant's offenses require lengthy and meaningful incarceration. They reflect not a savvy criminal defendant's quick decision to engage in minor fraud or identity theft, but rather a determined and deliberate scheme designed and executed to enrich himself and his co-defendant by criminally obtaining identities and to steal money that belongs to all of us. He did this, in his words, to feed a drug habit. PSR ¶ 29. Taken at face value, a drug habit could explain the defendant's motive for committing these crimes, however, it cannot and should not excuse him from significant punishment, which is warranted due to the nature and circumstances of the offense, to properly reflect the seriousness of the offense, to promote respect for the law, and to provide a just punishment for the serious offenses in which the defendant engaged.

The nature and circumstances of these offenses squarely support the need for a sentence at the top of the agreed upon sentencing range. The defendant convinced and caused his co-defendant (a female) to set up a profile on a "sugar daddy" website. Co-defendant Davison subsequently used her website profile to contact a co-conspirator, who Davison convinced to take out lines of credit and send her money, and purchase a luxury SUV, all for her and Alamoutinia's benefit. She subsequently convinced this co-conspirator to send them the names and PII of employees at his company to be used in the fraud scheme. Alamountina and Davison then used this PII to cause the filing approximately 500 fraudulent PUA applications.

As a result of this fraudulent conduct, Alamoutinia caused a loss to the government of nearly $2.9 million. In analyzing the circumstances of the offense, it should not be overlooked what program Alamoutinia defrauded. His case is different than someone who does not pay their

taxes, or other low-dollar white collar defendants. Alamoutinia took money the American people entrusted to the government, to be spent for the benefit of us all at the height of the panic and uncertainty of the COVID-19 pandemic. While anxiety and division engulfed this country, the defendant saw dollar signs. His crime falls squarely within the class of cases to which the applicable guidelines are addressed, and thus, consideration of the nature of the offense, pursuant to USSG § 3553(a)(1), counsels in favor of the top end of the agreed upon sentencing range.

Further, the defendant's history supports the need for significant incarceration. He is a documented fraudster and forger. PSR ¶¶ 45-61. It is clear that the recommended term of imprisonment is required "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." USSG § 3553(a)(2). Furthermore, the recommended sentence of incarceration would provide specific deterrence to the defendant and adequate general deterrence to others who would consider or be otherwise predisposed to steal money from the government on such a large scale. While the defendant's lengthy criminal history is outlined in paragraphs 45 through 61 of the PSR, those paragraphs also importantly reflect that Alamoutinia has largely received alternative sentences, or relatively short sentences of incarceration for his many convictions. A significant sentence in this case would certainly serve as a specific deterrent to the defendant, and as a general deterrent to other potential white collar defendants.

In addition, adherence to the recommended guideline range assures that the defendant's sentence is consistent with those imposed nationwide on similarly situated offenders and, thus, complies with Section 3553(a)(6) and avoids undue disparity. According to the Sentencing Commission's Judiciary Sentencing Information dashboard, from 2021 to 2025, defendants with

a final Guideline level of 24, a criminal history category of VI, and a conviction for aggravated identity theft,[3] received an average length of imprisonment of 114 months.

There is no need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ." USSG § 3553(a)(2)(D).

Therefore, in sum, all of the appropriate considerations of sentencing favor the imposition in this case of a sentence at the top of the agreed upon Guideline range. As noted, the Sentencing Guidelines present "the lodestone of sentencing," *Peugh*, 569 U.S. at 544, and that guide is once again persuasive in this case.

**B. <u>Supervised Release</u>**

Pursuant to Sections 5D1.1 and 5D1.2 of the Sentencing Guidelines, as amended effective November 1, 2025, the Court is directed to conduct an "individualized assessment" when deciding whether to impose a term of supervised release, and if supervised release is imposed, how long the term should be. The Court is further directed to state in open court its reasons for imposing or not imposing a term of supervised release, and its reasons for the length of a term imposed. Further, Section 5D1.3 sets forth mandatory conditions of a term of supervised release, and "discretionary conditions" that the Court may impose, following the same individualized assessment.

The guideline commentary, consistent with 18 U.S.C. § 3583(c), provides that the "individualized assessment" should rest on consideration of the same sentencing factors under 18 U.S.C. § 3553(a) that are considered with respect to a term of imprisonment, with the exception of Sections 3553(a)(2)(A) (the need for the sentence "to reflect the seriousness of the

[3] USSG data reflects four other defendants who met this criteria during this timeframe.

offense, to promote respect for the law, and to provide just punishment for the offense") and 3553(a)(3) ("the kinds of sentences available"), which do not apply with regard to supervised release decisions.

In this case, a term of supervised release of at least three years is warranted. As explained above, the defendant presents a lengthy record of criminal conduct, and previous alternative sentences have had no apparent effect to reduce the defendant's recidivism. Close supervision following release from imprisonment is warranted to aid his reentry to society and to protect the public. A term of supervised release in this case advances the goals of sentencing to deter criminal conduct, § 3553(a)(2)(B), protect the public, § 3553(a)(2)(C), assure that the defendant continues to pursue education and vocational efforts that promote rehabilitation, § 3553(a)(2)(D), and pays restitution to victims, § 3553(a)(7). Further, the Sentencing Commission recognizes that "the more serious the defendant's criminal history, the greater the need for supervised release." § 5D1.1 app. note 2. The Commission adds: "In a case in which a defendant sentenced to imprisonment is an abuser of controlled substances or alcohol, it is highly recommended that a term of supervised release also be imposed." § 5D1.1 app. note 3.

## IV. CONCLUSION

For these reasons and subject to any that may be presented at the defendant's sentencing hearing and in the Sealed Supplement, the government believes that a sentence at the top of the agreed upon sentencing range is appropriate in this case.

Respectfully submitted,

DAVID METCALF
United States Attorney

S. CHANDLER HARRIS
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that this Sentencing Memorandum has been served on the Filing User identified below through the Electronic Case Filing (ECF) system:

MICHAEL MCCROSSEN, ESQ.
Assistant Federal Defender
Counsel for Ardavan Alamoutinia

S. CHANDLER HARRIS
Assistant United States Attorney

DATED: September 17, 2026