**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **V.** | : | **CRIMINAL NUMBER 23-CR-225** |
| | : | |
| | : | |
| **ARDAVAN ALAMOUTINIA** | : | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**
**AND REQUEST FOR A DOWNWARD VARIANCE**

Ardavan Alamoutinia, by and through counsel, Michael McCrossen, Assistant Federal Defender, submits this memorandum to aid the Court in imposing a fair and just sentence in this case. Mr. Alamoutinia has pleaded guilty to an indictment charging conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. § 1349 (Count 1); mail fraud, in violation of 18 USC § 1341 (counts 2 through 11); theft of public money, in violation of 18 USC § 641 (count 12); and aggravated identity theft, in violation of 18 U.S.C. § 1028A. Mr. Alamoutinia is a young man who has endured great hardships and battled significant demons through his life. His actions in this case occurred when he had hit rock bottom. However, he now stands before this Court clean and sober, having rehabilitated himself beginning the day he was arrested. He has worked, and sought education, and repaired long-broken relationships with his family. He is committed to accepting responsibility for his actions, and continuing down the new, positive path he has forged for himself over the past four years.

Mr. Alamoutinia has now successfully navigated pretrial supervision in total compliance for 40 months, demonstrating his amenability to supervision, and likelihood of successfully reentering society at the conclusion of his incarceration. Mr. Alamoutinia looks forward to the eventual opportunity to repay every dollar he owes to the government, and to redeem himself in

the eyes of his community. In consideration of these circumstances, as well as the statutory sentencing factors of 18 U.S.C. § 3553 and its overarching mandate to impose a sentence "sufficient, but no greater than necessary" to achieve these goals, the Defendant respectfully suggests a sentence of 89 months imprisonment, within the range agreed to by the government and Mr. Alamoutinia, is appropriate.

## I. <u>Ardavan "Armin" Alamoutinia: The Person</u>

Ardavan Alamoutinia has endured a traumatic upbringing and battled substance abuse and mental illness throughout his early adulthood. His arrest in this case, though, provided a wakeup call: he has stayed clean and has been committed to sobriety since the day he was arrested, and has turned his life around completely, pursuing college education and until recently, working steadily.[1]

Ardavan Alamoutinia, who goes by "Armin," was born in Iran in 1990. He lived in Tehran until he was about 7 years old, when his family fled to France because Armin's father was a journalist reporting against the Iranian regime. The family moved again from France to Germany, and in 2000, immigrated to the United States and settled in Hershey, Pennsylvania. As a child, Armin suffered racial discrimination from peers and teachers alike, a torment that grew far worse after the September 11, 2001 terrorist attacks on the United States. Armin's home life was troubled as well. His father was physically abusive, hitting Armin with his fists, belt and on one occasion, breaking a chair over his back, and injuring him badly enough to miss a week of school. He was sexually abused as well. At 14, Armin's mother's boss plied him with alcohol

[1]Within the past year, Mr. Alamoutinia's passport has expired. As a result, he has been unable to secure financial aid for school, and has had difficulty obtaining a job. He was previously employed at Harrisburg Area Community College, but cannot maintain that position without being enrolled as a student there. He has sought new employment through various temp agencies.

and sexually assaulted him. When Armin told his mother, she refused to believe him. At 18 years old, Armin was drugged and raped.

Against this terrible background, it is perhaps unsurprising Armin turned to self-medication to cope. Beginning when he was a teenager, and continuing well into his twenties, when he was arrested in this case, Armin abused a wide variety of drugs; he has, at various times, used both powder and crack cocaine and taken ecstasy; he has shot, snorted and smoked heroin, and has taken massive numbers of oxycodone pills, sometimes at the same time he was on fentanyl. Eventually, he "settled into" a steady diet of opioids and marijuana. This drug abuse exacted a heavy toll on Armin, both physically and mentally. He has lost most of his teeth, and now wears dentures. He has long suffered from numerous insufficiently-treated mental illnesses, and the drug use only exacerbated his symptoms. The drug use also led him to drop out of high school, lose every job he had as a young man, and contributed significantly to his criminal conduct in this case.

In 2024, at the request of counsel, Dr. Marc Gramatges performed a psychological evaluation of Mr. Alamoutinia. His report is attached as Exhibit 1. As Dr. Gramatges summarized:

> "Mr. Alamoutinia had a significant history of persistent depression with major depressive episodes. He had anxiety and trauma stemming from early childhood abuse by his parents, molestation and rape as a teenager, and ongoing exposure to violence as an adult. Due to a previous ADHD diagnosis, testing was administered and did not show any clinical concerns. This reflects that his struggles with attention and focus are better attributed to his multiple other mental health concerns. He was previously diagnosed with a brief psychotic disorder as well as bipolar, but both those are better attributed to his addiction and complete lack of ability to cope with his mental health concerns let alone daily life stressors.
>
> The overall picture that emerges is Mr. Alamoutinia had a significant mental health history that has never been properly addressed. Rather than addressing his multiple

> health concerns as a teenager, he was simply medicated without addressing his core concerns. He eventually found his way into substance use as a way of coping. He used multiple substances until his early 20s but eventually settled into opioids and marijuana. His heavy usage only had brief periods of sobriety when incarcerated or in treatment centers. He reported finding sobriety on 11/20/22 though Suboxone maintenance. This still had questionable levels of compliance given the events that transpired at Hamilton Health Center. He reported being currently sober, but he has not addressed any of his mental health concerns. In common parlance, he's a "dry drunk."
>
> Mr. Alamoutinia's actions throughout his teens and adulthood have been a cycle of mental illness and substance use. He lacked coping skills and the ability to truly process his emotions. He was sober for now, but without support, relapse is inevitable. As seen with his risk assessment, he lacked sufficient leisure/recreation activities and companions. To address this significant interventions are needed. Fortunately, he acknowledges major difficulties in his life and the acute need for help in dealing with them."

Report of Dr. Gramatges, attached as Exhibit 1.

Mr. Alamoutinia's committed his offenses in this case between 2020 and 2022, during the early height of the COVID-19 pandemic, and at a time when he was in the throes of addiction worse than any other time in his life. Looking back now, Armin cannot fully comprehend his actions, because it feels to him like it was another person entirely. Nonetheless, he takes full responsibility for those actions, and has, in the almost four years since he was arrested, set about turning his life around completely.

After his arrest in November, 2022, Armin has stayed clean from any illicit drug use. Upon his indictment in this case, he completed a rehabilitation program at White Deer Run, not because he had begun using again, but because of his bad mental state, and a *fear* he would use again. However, through suboxone maintenance, he has stayed completely sober. As his mother told the probation officer, "In the last three years he has been completely sober, and I see he is a

different human being." (PSR ¶ 84). In 2023, he also attained his GED, and soon thereafter enrolled in classes at Harrisburg Area Community College (HACC). One of his instructors, English Professor Mary Jo Keiter, wrote a glowing reference letter, describing Armin as "a genuine soul, eager to learn and to improve his life" and a "pleasure" to have in her advanced writing class. (Professor Keiter's letter is attached as Exhibit 2). While attending HACC, Armin found a job at the college's career development office. Andrew Leister, Armin's supervisor in the career development office, wrote that he is a "dependable and capable individual, consistently adding and contributing to our team's objectives. He has a wonderful and passionate demeanor that allows him to tackle any project given to him." (Mr. Leister's letter is attached as Exhibit 3).

In short, Ardavan Alamoutinia has had an exceptionally difficult life, beset by mental illness, trauma and addiction. None of which excuses his criminal conduct, but all of which provides valuable insight for how he got to this point. He has already shown himself capable of turning things around. With adequate, ongoing treatment, and by availing himself of educational and vocational training available to him, he expects to emerge from his sentence a new, productive member of society.

## II. Application of the 18 U.S.C. 3553(a) Sentencing Factors

As the Court is aware, it must consider all the factors identified in 18 U.S.C. § 3553(a) in crafting a sentence that is "sufficient, but not greater than necessary" to satisfy the purposes of sentencing. In this case, application of the § 3553 factors weigh in favor of a sentence of 89 months imprisonment.

***a. The Nature and Circumstances of the Offense and Mr. Alamoutinia's History and Characteristics***

As detailed above, as well as in the Presentence Investigation Report and Dr. Gramatges's evaluation report, Mr. Alamoutinia has overcome a traumatic adolescence and adolescence in a abusive family environment and then a young adulthood marked by heavy substance abuse and mental illness. He has nonetheless proven himself capable of being a decent, contributing member of society who is truly ashamed of his actions.

Those actions, while indisputably criminal, and while involving a substantial amount of stolen money, were nonetheless nonviolent, and did not involve weapons, or trafficking in drugs or other dangerous contraband. As noted in Part F of the PSR, when determining an appropriate sentence, the defendant's long history of unaddressed substance abuse and his presentence rehabilitation, may be relevant factors for the Court's consideration. Here, those considerations - particularly Mr. Alamoutinia's traumatic personal history and characteristics - weighs in favor of a sentence near the bottom of the agreed-upon range.

***b. The Need for the Sentence Imposed to Promote Certain Statutory Objectives***

1. *To reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.*

*And*

2. *To afford adequate deterrence to criminal conduct.*

While a sentence of 89 months represents a modest downward variance from the sentencing guidelines, it is far from trivial. Seven-and-a-half years is a very significant amount of time to spend in prison, and as such, reflects the seriousness of Mr. Alamoutinia's offense, promotes respect for the law and provides just punishment. Moreover, it will serve as an

adequate and effective deterrent to criminal conduct, both by Mr. Alamoutinia specifically and the public generally. Such a sentence will be – by a large degree – the longest period Mr. Alamoutinia has ever served in jail or prison. Accordingly, such a sentence effectively promotes both of the first two statutory objectives.

*3. To protect the public from further crimes of the defendant.*

Similarly, a sentence of 89 months is sufficient to protect the public from further crimes of the defendant. Mr. Alamoutinia was arrested in November 2022 and was indicted and has been under the supervision of pretrial services since May of 2023. In that time he has not incurred any new arrests and has been in full compliance with the terms of his supervision. There is little reason to believe Mr. Alamoutinia, who will likely be in his mid-forties by the time of his release, will ever reoffend. Certainly, an 89-month prison sentence is sufficient to protect the public in the near term.

*4. To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.*

Mr. Alamoutinia plans to avail himself of any and all treatment, training and education offered to him so he can best reintegrate into society upon his eventual release. Moreover, he has expressed an interest in the S.T.A.R. Court reentry program.

***c. The Need to Avoid Unwarranted Disparities and Unwarranted Similarities***

A sentence of 89 months imprisonment would not result in an unwarranted sentencing disparity. Section 3553(a)(6) is not only "concern[ed] with disparities resulting from the normal trial and sentencing process," *Pepper v. United States*, 562 U.S. 476, 503 (2011), but its command to avoid unwarranted disparities carries with it "the need to avoid unwarranted *similarities*" as well. *Gall*, 552 U.S. at 55 (emphasis in original). Where, as in this case, a

defendant's personal history and background, motivation for committing the offense, acceptance of responsibility, and argument for a modest variance warrant a lower sentence than that imposed on a defendant charged with a similar crime, the difference between the sentences is warranted and just. *See Pepper*, 526 U.S. at 510 (Breyer, J., concurring) ("A just legal system seeks not only to treat different cases differently but also to treat like cases alike. Fairness requires sentencing uniformity as well as efforts to recognize relevant sentencing differences.").

To satisfy this statutory mandate, the Court must look at available data regarding sentences for fraud and related offenses across the country. According to the United States Sentencing Commission, during the current fiscal year through June 30, 2026—the latest available statistics—sentencing courts imposed below-Guidelines sentences in 41.7% of all fraud/theft/embezzlement cases. USSC, *Quarterly Data Report, 3rd Quarter Release, Preliminary Fiscal Year 2026 Data*, at 15 (2026) (hereinafter "*Data Report, FY 2026*"). In those cases where defendants received downward variances that were *not* at the government's request, Courts imposed sentences that were, on average, 56.1% below the applicable Guidelines range. *Id.* at 23. Notably, many of those cases involved loss amounts ranging from hundreds of thousands to tens of millions of dollars; thus, a number of those defendants faced more substantial prison sentences for more serious offenses corresponding to higher monetary losses. Nevertheless, the sentences imposed reflected substantial downward variances or departures from the original advisory ranges.

Given this data and the information the Court now has about Mr. Alamoutinia himself, a sentence of 89 months imprisonment is wholly appropriate in this case.

***d. The Need to Provide Restitution***

In determining the appropriate sentence, the Court must consider "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). Mr. Alamoutinia owes a significant amount of restitution. By way of his guilty plea, he acknowledges this debt and has agreed to repay it. The most appropriate means of achieving this sentencing goal is to enable him to work and earn money.

## III. <u>Conclusion</u>

Ardavan Alamoutinia committed a serious and ongoing federal offense, for which he takes full responsibility. At the time of his offense, he was in the throes of a long and debilitating drug addiction that began after a tumultuous and abusive childhood. Mr. Alamoutinia pleaded guilty pursuant to a plea agreement in which both he and the government agreed that a term of imprisonment of between 89 and 121 months is appropriate. For all the reasons stated herein, and any that become apparent to the Court at the sentencing hearing, the defense respectfully submits that a sentence of 89 months, the low end of the agreed-upon range, is sufficient to meet the objectives set forth in 18 U.S.C. § 3553. Mr. Alamoutinia respectfully suggests the Court sentence him accordingly.

Respectfully submitted,

*/s/ Michael McCrossen*
MICHAEL MCCROSSEN
Assistant Federal Defender

**CERTIFICATE OF SERVICE**

I, Michael McCrossen, Assistant Federal Defender, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby certify that I filed the attached Defendant's Sentencing Memorandum and Motion for a Downward Variance via the Court's Electronic Filing (ECF) system, which sent notification to S. Chandler Harris, Assistant United States Attorney, Suite 1250, 615 Chestnut Street, Philadelphia, Pennsylvania 19106, via email to: Chandler.Harris@usdoj.gov.

*/s/ Michael B. McCrossen*
MICHAEL B. McCROSSEN
Assistant Federal Defender

DATE: September 22, 2026